This workers' compensation case concerns the extent of an employer's liability for an injury that occurred off the employer's premises.
Fred Green sued for workers' compensation benefits, based on a herniated disk that was discovered after he experienced abdominal pain while picking up his 12-pound baby at his home. Green and his employer, the Pike County Commission, submitted a joint motion asking the trial court to determine whether Green was entitled to workers' compensation benefits. The court determined that the herniated disk was a "recurrence" of Green's prior work-related back injuries and awarded Green workers' compensation benefits. The Court of Civil Appeals affirmed the trial court's judgment, holding that there was substantial evidence to support it. Pike County Comm'n v. Green, [Ms. 2970094, June 5, 1998]740 So.2d 1076 (Ala.Civ.App. 1998). We granted the Pike County Commission's petition for certiorari review. Although the trial court and the Court of Civil Appeals incorrectly relied on the analytical framework provided by United States Fidelity GuarantyCo. v. Stepp, 642 So.2d 712 (Ala.Civ.App. 1994), we nonetheless affirm.
 I.
In November 1996, Green sued the Pike County Commission for workers' compensation benefits. The parties filed a "Joint Motion to Determine Necessity of Medical Benefits," setting out stipulated facts and requesting that the trial court determine whether Green was entitled to medical benefits under the applicable workers' compensation laws.
The parties' stipulation of facts indicates the following: Green first complained of back pain in October 1991, after he stepped from a tractor at work. Dr. Todd Pearlstein treated Green with pain medication and prohibited him from doing any heavy lifting for a week. In May 1993, Green returned to Dr. Pearlstein's office, complaining of back pain that occurred after he slipped from a front-end loader. Dr. Pearlstein again treated Green with pain medication and prohibited heavy lifting for a week. In November 1994, Green again returned to Dr. Pearlstein's office, complaining of back pain that occurred after he pulled on a piece of pipe. Dr. Pearlstein released Green after discussing proper lifting techniques, stretching, and warm-ups. In May 1995, Green returned to Dr. Pearlstein, complaining of abdominal pain he had experienced after lifting blocks. In September 1995, Green returned to Dr. Pearlstein's office, complaining of back and abdominal pain that occurred after he lifted his 12-pound baby. A CAT scan revealed a herniated disk. Dr. Pearlstein prohibited Green from heavy lifting, frequent bending, and squatting. He also referred Green to Dr. Robert Bradley, a neurosurgeon. *Page 1083 
Based on the stipulated facts and on Dr. Bradley's deposition testimony,[1] the trial court held that there was substantial evidence to indicate that the September 1995 problem was a recurrence of a previous work-related injury, an injury that was exacerbated by Green's lifting the baby. Accordingly, the trial court awarded Green workers' compensation benefits. The Court of Civil Appeals affirmed.
 II.
"`[W]hen a trial court sits in judgment on facts that are undisputed, an appellate court will determine whether the trial court misapplied the law to those undisputed facts.'" Harris v.McKenzie, 703 So.2d 309, 313 (Ala. 1997) (quoting Craig Constr.Co. v. Hendrix, 568 So.2d 752, 756 (Ala. 1990). The trial court in this case applied the "last-injurious-exposure" rule to determine whether Green's herniated disk is a compensable injury. That rule is generally used only to determine which insurance carrier bears responsibility for paying workers' compensation benefits when an employee suffers two or more episodes of compensable disability with an intervening change of employers or change of insurance carriers by the same employer. See 9 Arthur Larson Lex K. Larson, Larson's Workers' Compensation Law, § 95.20 (1998). Under the last-injurious-exposure rule, the carrier covering the risk at the time of the most recent compensable injury bearing a causal relation to the disability bears the responsibility to make the required workers' compensation payments. See id. "The characterization of the second injury as a new injury, an aggravation of a prior injury, or a recurrence of an old injury determines which insurer is liable." North RiverIns. Co. v. Purser, 608 So.2d 1379, 1382 (Ala.Civ.App. 1992) (citing Larson, supra, § 95.11). If the second injury is a "new injury"[2] or an "aggravation of a prior injury,"[3] then the carrier at the time of the second injury is liable for the resulting medical bills and disability payments. See id. (citing Larson, supra, § 95.21). If, however, the second injury is a "recurrence"[4] of a prior injury, then the carrier at the time of the prior injury is liable for the resulting medical bills and disability payments. See id. (citing Larson, supra, § 95.21). Accordingly, if the second injury contributes even slightly to the employee's disability, the current insurer is responsible for the workers' compensation payments. Alabama courts have adopted this rule because it serves public policy by, among other things, "spar[ing] litigants the difficult task of apportioning blame in successive-injury cases" and by being "consistent with Alabama's normal rule for pre-existing injuries, i.e., that the employer (and the employer's insurance carrier) `takes an employee as he finds him at the time of employment.'" Id. (quoting *Page 1084 Patterson v. Clarke County Motors, Inc., 551 So.2d 412,416 (Ala.Civ.App. 1989)).
The considerations that apply to place workers' compensation responsibility on the current insurer "are inapplicable when the subsequent injury is [not work-related]." Warpinski v. StateIndus. Ins. Sys., 103 Nev. 567, 569, 747 P.2d 227, 229 (1987). Instead, such cases are governed by the "successive-compensable-injury" test. When determining whether a successive injury is compensable, the general rule is that "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to [the] claimant's own intentional conduct." 1 Larson, supra, § 13.00. In applying this rule to a factually similar case, the Supreme Court of Appeals of West Virginia held:
 "[I]f a worker's compensation claimant shows that he received an initial injury which arose out of and in the course of his employment, then every normal consequence that flows from the injury likewise arises out of the employment. If, however, a subsequent aggravation of the initial injury arises from an independent intervening cause not attributable to the claimant's customary activity in light of his condition, then such aggravation is not compensable.
 "Thus, the fact that the claimant is injured and then returns to work does not mean that he is foreclosed from demonstrating that the original injury became aggravated by some routine event which triggered its recurrence. Such routine event is ordinarily one where the claimant is doing an activity that would be customary in light of his condition."
Wilson v. Workers' Compensation Comm'r, 174 W. Va. 611, 616,328 S.E.2d 485, 490 (1984); see also Lou Grubb Chevrolet, Inc. v.Industrial Comm'n, 174 Ariz. 23, 26, 846 P.2d 836, 839 (Ariz.App. 1992) ("[An] employee's reasonable conduct in causing a later nonindustrial injury does not relieve the employer of liability if the later injury is the `direct and natural result' of the compensable work injury."). Thus, "a subsequent injury, whether an aggravation of an original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury." 1 Larson, supra, § 13.11.
Because Green's subsequent injury was not work-related, the successive-compensable-injury test, and not the last-injurious-exposure rule, applies. Lifting a 12-pound baby is an activity that is "customary in light of [Green's] condition." Wilson,174 W. Va. at 616, 328 S.E.2d at 490. Because the undisputed evidence in this case indicates that Green's herniated disk was a natural and direct result of his job-related back injuries, the trial court properly held that Green's September 1995 injury was compensable.
 III.
The trial court properly held that Green is entitled to workers' compensation benefits for his herniated disk. Accordingly, the judgment of the Court of Civil Appeals is affirmed.
AFFIRMED
Hooper, C.J., and Maddox, Houston, Cook, Lyons, Brown, and Johnstone, JJ., concur.
[1] Dr. Bradley testified, "I would tend to think [the herniated disk] had occurred before [the baby incident]. . . . The problem was already there and that picking up the baby made hissymptoms worse." (Emphasis added.) Dr Bradley further testified, "I think [the herniated disk] is work-related and the baby may have exacerbated things . . . but I still find it difficult to believe that somebody that does heavy labor every day is going to have such a problem from picking up a 12-pound baby unless there was an obvious underlying problem already there." Finally, Dr. Bradley concluded, "I didn't feel that lifting the baby caused the injury. . . ."
[2] The second injury is characterized as a "new injury" if it is the sole cause of the final disability. See UnitedStates Fid. Guar. Co. v. Stepp, 642 So.2d 712, 715
(Ala.Civ.App. 1994).
[3] The second injury is characterized as an "aggravation of a prior injury" if "the `second [injury] contribute[s] independently to the final disability.'" United States Fid. Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App. 1994) (first alteration in Stepp) (quoting Larson, § 95.22).
[4] The second injury is characterized as a "recurrence" if "`the second [injury] does not contribute even slightly to the causation of the [disability].'" United States Fid. Guar. Co.v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App. 1994) (alterations in Stepp) (quoting Larson, § 95.22). *Page 1085